IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JAMES C. JUSTICE COMPANIES, INC.,

        Plaintiff,

v.                    CIVIL ACTION NO. 5:06-cv-00287

DEERE & COMPANY and
JOHN DEERE COMPANY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is John Deere's Motion to Stay All Proceedings Pending Arbitration of Plaintiff's Claims [Docket 13]. By Order entered July 28, 2006 (Prior Order), this motion was held in abeyance pending additional limited discovery and briefing on the following subjects:

> (1) the specific basis for John Deere's refusal to allow the sale of R.P. Johnson to JCJC (*e.g.,* the John Deere/R.P. Johnson dealership agreement, the John Deere/Blueridge dealership agreement, etc.);
>
> (2) whether the Purchase Restriction applies to JCJC;
>
> (3) whether JCJC and Blueridge are alter egos; and
>
> (4) whether John Deere may legally compel JCJC to submit its Sherman Act claims to arbitration. *See In Re: Cotton Yarn Antitrust Litig.*, 406 F. Supp. 2d 585 (M.D.N.C. 2005) (appeal pending).

[Prior Order at 8.] The parties timely submitted the additional briefing as requested by the Court. With regard to the fourth issue, the arbitrability of JCJC's Sherman Act claims, the Court notes that the Fourth Circuit issued its mandate in *In re Cotton Yarn Antitrust Litig.* on January 11, 2008. *See*

*In Re: Cotton Yarn Antitrust Litig.*, Docket No. 05-2392 (4th Cir. Jan. 11, 2008).¹ Accordingly, John Deere's motion is now ripe for disposition.

*I. ANALYSIS*

Much of the relevant background of this action was set forth in the Prior Order, which the Court incorporates by reference. As noted above, the Court requested the factual and legal development of certain issues in its Prior Order, and those issues are discussed below.

*A. Contractual Basis for Arbitration*

In its Prior Order, the Court sought clarification of the precise contractual basis for John Deere's motion to compel arbitration. In its supplemental memorandum, John Deere states that it moves to compel arbitration of JCJC's claims based on the Dealership Agreement between John Deere and Blueridge. The Arbitration Provision states that:

> Although Dealer and [John Deere] are entering into this Agreement in a spirit of cooperation and mutual respect, it is possible that Disputes may arise. Dealer, (including without limitation guarantors of Dealer), Company and Deere Credit, Inc., agree that any Dispute shall be finally resolved by binding arbitration pursuant to the terms set forth in Exhibit 4. The duty to arbitrate shall extend to any officer, employee, shareholder, principal, agent, partner, trustee (in bankruptcy or otherwise), or subsidiary of Dealer as to any Dispute that is subject to this Section [].

As noted in the Prior Order, JCJC has conceded that it is subject to the Dealership Agreement's Arbitration Provision, as it is a guarantor of Blueridge (the Dealer).² John Deere claims that a "Dispute" has arisen between it and JCJC under the Dealership Agreement's Purchase Restriction. The Purchase Restriction states that:

---

[1] The undersigned notes that he was a member of the Fourth Circuit's panel in *In Re: Cotton Yarn Antitrust Litig.*

[2] Importantly, JCJC has agreed to resolve any dispute through arbitration, not just disputes that would arise out of its role as a guarantor.

> Dealer shall request and obtain written approval from [John Deere] prior to discussing (directly or indirectly) with any dealer a possible purchase of a dealership that would add to Dealer's [Area of Responsibility] or constitute a new area of responsibility for Dealer. [John Deere], in its sole discretion, shall have the right to reject such a request, to disapprove additions to Dealer's [Area of Responsibility], and to refuse assignment of a new area of responsibility to Dealer.

As an arbitration agreement exists between John Deere and JCJC, the Court must decide whether the parties' dispute falls within the scope of their agreement. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001).

### B. Applicability of Purchase Restriction to JCJC

John Deere argues that the Purchase Restriction is applicable to JCJC, thus providing the basis for a dispute within the scope of the Dealership Agreement. As noted by John Deere, the Purchase Restriction directs Blueridge to obtain written approval from John Deere prior to "directly or indirectly" discussing the purchase of another John Deere dealership which would add to Blueridge's Area of Responsibility (AOR). "JCJC does not deny that its Blueridge dealership would have been expanded by the acquisition of R.P. Johnson." [John Deere's Reply, Docket 59 at 4.] Nonetheless, JCJC argues that the Purchase Restriction does not apply to JCJC and does not require JCJC to seek approval from John Deere prior to purchasing R.P. Johnson.

The record demonstrates that the attempted expansion of Blueridge began on January 6, 2006, when Blueridge and R.P. Johnson entered into a confidentiality agreement with regard to the prospective purchase of R.P. Johnson by Blueridge. On January 19, 2006, JCJC and R.P. Johnson entered into an option agreement for the purchase of R.P. Johnson by JCJC. Finally, in or about early 2006, JCJC submitted, or approved the submission of, a Dealer Proposal and Marketing Plan (the Plan) to John Deere. The Plan provided that JCJC, identified as the "parent to Blueridge,"

would purchase the stock of R.P. Johnson, and thereafter operate both dealerships as "Blueridge Farm Center." [Docket 57-10 at 9.]

The Court notes that the Purchase Restriction clearly prevents a John Deere dealership from directly or indirectly adding to its AOR. Based on the record, the Court **FINDS** that Blueridge seeks to indirectly add to its AOR. Clearly, in order to indirectly add to its AOR, a third party must be involved, and JCJC was the third party. Therefore, the Court **FINDS** that the Purchase Restriction also prevents JCJC from adding to Blueridge's AOR, and that the Purchase Restriction applies to JCJC in this case. The Court also notes that the Federal Arbitration Act's "liberal federal policy favoring arbitration agreements," *In Re: Cotton Yarn*, 505 F.3d 274, 281 (4th Cir. 2007), supports its conclusion that JCJC is subject to the Purchase Restriction.

Regarding whether a specific dispute falls within the substantive scope of an arbitration agreement, "the court's inquiry is limited to that of ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Berkery v. Cross Country Bank,* 256 F.Supp.2d 359, 364 n.3 (E.D. Pa. 2003). JCJC's claims in this case directly implicate the Purchase Restriction. Because JCJC has agreed to resolve any disputes arising under the Dealership Agreement through arbitration, JCJC's claims are subject to arbitration.

*C. Alter Ego*

Alternatively, John Deere argues that JCJC is subject to the Purchase Restriction because JCJC and Blueridge are alter egos. In *Bowers v. Wurzburg,* 501 S.E.2d 479 (W. Va. 1998), the Supreme Court of Appeals of West Virginia held the following factors must be considered in determining whether to assert personal jurisdiction over the parent of a subsidiary doing business in West Virginia:

4

> (1) Whether the parent corporation owns all or most of the capital stock of the subsidiary;
> (2) Whether the parent and subsidiary corporations have common directors and officers;
> (3) Whether the parent corporation finances the subsidiary;
> (4) Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
> (5) Whether the subsidiary has grossly inadequate capital;
> (6) Whether the parent corporation pays the salaries and other expenses of losses of the subsidiary;
> (7) Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
> (8) Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;
> (9) Whether the parent corporation uses the property of the subsidiary as its own;
> (10) Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and
> (11) Whether the formal legal requirements of the subsidiary are not observed.

*Id.* at 490.  The court cautioned this was not an exhaustive list and each case must be determined on its own unique facts.  *Id.*  While *Bowers* dealt with the alter ego analysis in the context of whether to assert jurisdiction over a parent company, the Court finds *Bowers* instructive.

The record in this case demonstrates that JCJC owns all of the stock of Blueridge, JCJC and Blueridge have identical management structures, and JCJC and Blueridge were acting in concert during the attempted acquisition of R.P. Johnson.  Thus, *Bowers* factors 1 and 2 are present.  As the issue to be decided is whether Purchase Restriction applies to JCJC, the Court believes that, in the context of this case, the *Bowers* factor 10 is of paramount importance.  Under that factor, the crucial inquiry is whether Blueridge acted independently of JCJC in the plan to add R.P. Johnson to its AOR.  It is clear from the record that Blueridge, having the identical management as JCJC, did not act independently in JCJC's plan to purchase R.P. Johnson and operate it and Blueridge as a consolidated entity.  Rather, the record is clear that JCJC viewed Blueridge as an asset to be

developed through expansion. Therefore, the Court **HOLDS** that JCJC and Blueridge were alter egos for the purpose of purchasing R.P. Johnson, and that JCJC is subject to the Purchase Restriction. Accordingly, JCJC must submit its claims against John Deere to arbitration for this additional reason.

*D. Arbitrability of Antitrust Claim*

Having concluded that JCJC must submit its claims to arbitration according to the Dealership Agreement, the Court must examine whether JCJC's antitrust claim may be the subject of an arbitration proceeding. In *In Re: Cotton Yarn*, the Fourth Circuit held that "domestic antitrust claims, as a class, are suitable for arbitration." 505 F.3d at 282. The *Cotton Yarn* court noted, however, that "arbitration of [a federal statutory] claim will not be compelled if the prospective litigant cannot effectively vindicate his statutory rights in the arbitral forum." *Id*. The *Cotton Yarn* court then examined whether certain terms of the arbitration agreement in that case prevented effective vindication.

Here, JCJC claims that three terms in the Dealership Agreement prevent the effective vindication of its statutory rights under the Sherman Act: (1) the prohibition of the recovery of treble damages and attorney's fees; (2) prohibition of the right to a jury trial; and (3) a shortened statute of limitations period. As noted by the *Cotton Yarn* court:

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. Thus, [courts] must consider whether the contractual limitations period is inconsistent with any substantive rights conferred under the antitrust laws.

*Id.* at 289.

*(1) Treble Damages and Attorney's Fees*

The Dealership Agreement prevents the recovery of "multiple damage" and states that "each party shall bear its costs associated with the arbitration, including attorneys' fees[.]" [Docket 57-3 at 5 & 15.] 15 U.S.C. § 15(a) provides, in relevant part, that a party "shall recover threefold the damages by him sustained and the cost of suit, including a reasonable attorney's fee." Thus, the Dealership Agreement and 15 U.S.C. § 15 are in conflict.

With regard to the limitation on treble damages, the First Circuit has held that "the award of treble damages under the federal antitrust statutes cannot be waived." *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006). The *Kristian* court noted, however, that the arbitration agreement at issue contained a "savings clause," which allowed the court to sever that provision and compel arbitration. *Id* at 49.

This Court agrees with the *Kristian* court that treble damages as provided for in the Sherman Act is a non-waivable substantive right. The Court notes that the Dealership Agreement contains a severability clause, providing that "Any provision of this Agreement . . . that is prohibited or unenforceable . . . shall . . . be ineffective . . . without invalidating . . . the remaining provisions of this Agreement[.]" [Docket 57-3 at 6.] Therefore, as in *Kristian*, this Court **HOLDS** that the Dealership Agreement's provision prohibiting the recovery of treble damages is **SEVERED**, thus saving the remaining terms of the agreement, including the Arbitration Provision.

With regard to attorney's fees, the Fourth Circuit in *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 558 (4th Cir. 2001), held that "a case-by-case inquiry, rather than a per se rule, is more appropriate for determining the enforceability of an arbitration agreement that contains a fee-splitting provision." The *Bradford* court affirmed the district court's decision to compel

arbitration because plaintiff offered no evidence that he was unable to pay the $4,470.88 that he was billed by the AAA, or that the fee-splitting provision deterred him from pursuing his statutory claim. As in *Bradford*, JCJC has offered no evidence that paying its own attorney's fees and costs in arbitration would prevent it from effectively vindicating its rights under the Sherman Act. Therefore, Court cannot conclude that the Dealership Agreement's limitation on attorney's fees and costs is inconsistent with the policies of the Sherman Act.

### *(2) Jury Trial*

As noted above, the *Cotton Yarn* court held that domestic antitrust claims are suitable for arbitration. Thus, JCJC's argument that the Dealership Agreement prohibition on the right to a jury trial prevents it from effectively vindicating its statutory rights is meritless.

### *(3) Limitations Period*

Finally, the Dealership Agreement states that "No party to a Dispute may commence litigation or arbitration proceedings with respect to such Dispute more that two years after that party's cause of action accrues." [Docket 57-3 at 5.]  15 U.S.C. § 15b establishes a four-year limitations period in which to bring a claim for a violation of the Sherman Act, 15 U.S.C. § 1. The *Cotton Yarn* court held that:

> [T]he Clayton Act's four-year limitations period is not a substantive portion of the federal antitrust laws and that the federal limitations period may be shortened by contract. The one-year limitation period established in the arbitration agreements is not unreasonably short, and the plaintiffs have failed to demonstrate that the one-year limitation period will prevent them from pursuing their antitrust claims.

*In Re: Cotton Yarn*, 505 F.3d at 293.

Here, it is undisputed that JCJC brought its claims within the two year period provided in the Dealership Agreement. Thus, this provision has provided no obstacle to JCJC in effectively vindicating its statutory rights. As such, any argument to the contrary by JCJC is meritless.

## *II. CONCLUSION*

For the foregoing reasons, it is **ORDERED** that:

(1) John Deere's Motion to Stay All Proceedings Pending Arbitration of JCJC's Claims [Docket 13] is **GRANTED**;

(2) the Dealership Agreement's provision prohibiting the recovery of treble damages is **SEVERED** from that agreement;

(3) the parties shall conduct the arbitration of this matter and jointly report the results of the arbitration to the Court;

(4) all other proceedings[3] in this action be, and they hereby are, **STAYED** pending the results of the arbitration or until further order of the court; and

(5) this case shall be retired from the active docket of the court until further order of the Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and unrepresented party.

ENTER:     March 27, 2008

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[3] The stay includes R.P. Johnson's motion to intervene. If R.P. Johnson seeks to participate in the arbitration, the Court leaves the issue of whether to allow R.P. Johnson to do so to the arbitrator.